KEVIN THOMPSON and wife, )
JOY THOMPSON, and )
SHAUN TRAVIS SMITH, )
                                 )
    Plaintiffs, )
                                 )
vs. )   Docket No. _____
                                 )
JACOBS ENGINEERING GROUP, INC., )
                                 )
    Defendant. )

## COMPLAINT

COME NOW Plaintiffs, Kevin Thompson and wife, Joy Thompson, and Shaun Travis Smith, by and through counsel, for their complaints, allege upon knowledge as to their own acts, and upon information and belief, states as follows:

### STATEMENT OF CASE

This is a civil action pursuant to all appropriate legal federal and state legal authority, including but not limited to personal injuries resulting from continuous unlawful exposure to arsenic, the neurotoxin mercury, barium, strontium, thallium, upon information and belief, asbestos, radioactive material, selenium, lead, silica – quartz, aluminum oxide, iron oxide, calcium oxide, boron, and other hazardous substances associated with toxic fly ash located at TVA Superfund Cleanup Site at the KIF location in Kingston, Tennessee. Questions of the series of occurrences, facts and law are common to the Plaintiffs and they pray that this action should therefore be joined pursuant to Fed. R. Civ. P. 20 as Plaintiffs assert their right to relief as such arises out of the same series of occurrences.

## JURISDICTION AND VENUE

1. The action complained of herein arose in Roane County, Tennessee where the toxic cleanup occurred and Jacobs Engineering Group, Inc. is a foreign corporation located in Pasadena, California. Therefore, this Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332 as this action is well in excess of seventy five thousand dollars ($75,000.00).

## THE PARTIES

1. Plaintiff Kevin Thompson is a resident and citizen of Tennessee, residing at 207 County Road, #296, Sweetwater, Tennessee, 37874.

2. Joy Thompson is the spouse of Kevin Thompson and claims loss of consortium damages against the Defendant for personal injuries of her husband described more particularly herein.

2. Plaintiff Shaun Travis Smith is a resident and citizen of Tennessee, residing at 2910 Mount Caramel Road, Decatur, Tennessee, 37222.

3. Defendant Jacobs Engineering Group, Inc. is a foreign corporation with its principal place of business in Pasadena, California. Jacobs Engineering Group, Inc. was licensed to do business, and was and is doing business, in the State of Tennessee and elsewhere is directly liable for all actions contained herein. Jacobs Engineering Group, Inc. may be served through its Managerial Agent Thomas Bock who is located at the KIF Remediation Site located at 714 Swan Pond Road, Harriman, Roane County, Tennessee 37748.

## GENERAL ALLEGATIONS

### The Site

4. The events described herein took place primarily at the TVA KIF Superfund Cleanup Site in Kingston, Roane County, Tennessee. Jacobs Engineering Group, Inc. was

2

constructed to provide a safe environment for all employees of various employers who performed Superfund Remediation work at KIF in regards to the ash spill site in Kingston, Tennessee↓.

Events and Facts Surrounding the Continuous Unlawful Exposure

Incurred by the Plaintiffs

5.  TVA had entered into prime contracts with several companies, including Jacobs Engineering Group, Inc., (the contracted oversees site safety at KIF) and upon information and belief, the contracts with Jacobs Engineering Group, Inc. greatly exceeded forty million dollars ($40,000,000.00) for which the purpose was to appropriately provide safety for cleanup of environmental contamination/remediation for the benefit of TVA to protect the taxpaying citizens of Roane County, workers at the Site, and the general area to restore portions of property damaged by the Kingston (KIF) ash spill, and to appropriately repair the KIF fly ash containment structure.

6.  Despite Jacobs Engineering Group, Inc.'s duties under this multi-million dollar agreement to the taxpayers, they misrepresented to workers of other employers at the KIF Site, TVA and the Roane County citizens that the Superfund remediation would be conducted in a timely, safe manner, and upon information and belief, it was intentionally contrary to numerous representations made by the Defendant that fly ash was not harmful to human health.

7.  However, Jacobs Engineering Group, Inc. had in its possession manuals for the fly ash safety that contained vital information on the toxic constituents, of which the Defendant was intentionally and knowingly aware of how to protect the safety of individuals

on Site, as well as informing its workers of other employers of its danger(s). Instead they intentionally lied to the workers about the safety of fly ash constituents.

In the Defendant's own possession were documents that referenced toxic constituents and target organs. One example of such information was:

↓                                                                                          ↓

| CONSTITUENTS | CAS # | SITE ACTION LEVEL[1] | SITE EXPOSURE LIMIT[2] | ROUTES OF EXPOSURE | SYMPTOMS OF EXPOSURE | TARGET ORGANS | NIOSH METHODS |
|---|---|---|---|---|---|---|---|
| SILICA – QUARTZ[3] RESPIRABLE  CRISTOBALITE | 14808-60-7  14464-46-1 | 0.025 MG/M³ | 0.050 MG/M³ | INHALATION, SKIN AND/OR EYE CONTACT, INGESTION | COUGH, DYSPNEA WHEEZING, PROGRESSIVE RESPIRATORY SYMPTOMS (SILICOSIS), IRRITATION EYES | EYES, RESPIRATORY SYSTEM | 7500 7601 7602 |
| ALUMINUM OXIDE | 1344-28-1 | 2.5 MG/M³ | 5 MG/M³ | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, RESPIRATORY SYSTEM | EYES, SKIN, RESPIRATORY SYSTEM | 0500 0600 |
| IRON OXIDE | 1309-37-1 | 2.5 MG/M³ | 5 MG/M³ | INHALATION, INGESTION | BENIGN, PNEUMOCONIOSIS | RESPIRATORY SYSTEMS | 7300 7301 7303 9102 |
| CALCIUM OXIDE | 1305-78-8 | 2.5 MG/M³ | 5 MG/M³ | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, UPPER RESPIRATORY TRACT, ULCER PERFORATION, NASAL SEPTUM | EYES, SKIN, RESPIRATORY SYSTEM | 7020 7303 |
| ARSENIC[4] (INORGANIC) | 7440-38-2 | 0.005 MG/M³ | 0.01 MG/M³ | INHALATION, SKIN ABSORPTION, SKIN AND/OR EYE INGESTION | ULCERATION OF NASAL SEPTUM, DERMATITIS, GASTROINTESTINAL DISTURBANCE, PERIPHERAL NEUROPATHY, RESPIRATORY IRRITATION | LIVER, KIDNEYS, SKIN, LUNGS, LYMPHATIC SYSTEM | 7300 7301 7303 7900 9102 |

1. Based on 50% of the 8 hour/day exposure limit
2. Based on the lower of the values recognized by OSHA or the ACGIH. Crystalline silica value is based on TOSHA levels which is typically lower than the sample-specific calculated OSHA level.
3. Suspected human carcinogen
4. Confirmed human carcinogen

4-15

8. As referenced previously, at all times, Jacobs Engineering Group, Inc. had full access to the manuals' specialized information, and based upon information and belief and

4

the level commercial sophistication, that they knew of the appropriate danger and should have protected all near the KIF Ash Spill.

9. Based upon statement and facts learned from workers, the Defendant engaged in intentional improper air monitoring of the fly ash in violation of federal and state laws.

10. Based upon later information acquired by Plaintiffs, they were intentionally subjected to inadequate safety training in regards to the hazards associated with inhaling toxic fly ash.

11. Based upon information acquired by Plaintiffs, they were subjected to inadequate medical monitoring regarding the hazardous fly ash constituents.

12. Plaintiffs worked long hours per day in close proximity with toxic fly ash constituents.

13. The fly ash dust and debris material was inhaled and on occasion would become imbedded in the Plaintiffs' skin.

14. Many people specifically requested that Defendant provide them with respirators, dust masks and personal protective equipment, such as specialized clothing intended to protect workers from coming into direct contact with hazardous substances contained in fly ash, but such requests were denied.

15. Defendant expressly refused Plaintiffs' specific request for respirators and personal protective equipment to use during cleanup of the fly ash Site and threatened some who so requested. Further, when some were prescribed respirators, they were ordered not to wear said items, despite Defendant being responsible to provide a safe environment for individuals present on the site, such occurred with plaintiffs Kevin Thompson and Shaun Travis Smith.

5

16. Consequently, Plaintiffs were improperly exposed to high concentrations of these fly ash toxic constituents while working on the Superfund Site at KIF for a prolonged duration of time.

17. Failure to provide hazardous materials workers with personal protective equipment is a violation of federal and state worker protection law.

18. The Defendant intentionally did not require the matter to be handled, abated, or disposed in accordance with legal requirements for management and disposal of such substances despite Plaintiffs' exposure.

19. Defendant fraudulently concealed and continued to deny the fact that Plaintiffs had been exposed to hazardous substances.

20. The improper handling of the fly ash, as instructed by the Defendant, is disseminated down to Plaintiffs that worked on site for other employers and other hazardous substances caused them to become airborne throughout the Site.

21. Upon information and belief, the fly ash constituents and other hazardous substances have remained present in the air, soil and water at the Site until the present time.

22. Plaintiffs and other workers for the employers at the Site therefore continue to suffer exposure to these hazardous substances for as long as they work at the Site.

23. The effects of continued exposure to such hazardous substances have resulted and will continue to result in cumulative negative health impacts on Plaintiffs, including but not limited to eye problems, sinus problems, pulmonary problems, heart problems and other health-related problems as indicated by Jacobs Engineering Group, Inc.'s own internal documents, some of which is referenced in Paragraph 7.

## FIRST CLAIM FOR RELIEF

24. Plaintiffs refer to and reallege Paragraphs 1 through 23 of this Complaint and incorporate them by this reference, as though fully set forth herein.

25. Plaintiffs hereby assert their cause of action for Outrageous Conduct. Defendant's intentional knowing, wanton, and willful exposure of Plaintiffs, who worked for other employers at KIF, to toxic fly ash constituents, and other hazardous substances and intentional denial of personal protective equipment and respirators to Plaintiffs would be perceived as outrageous by any reasonable person, and not tolerated in a just, civilized society.

26. Defendant acted with the reckless or intent to cause Plaintiffs emotional distress, by disregarding whether or not exposing Plaintiffs to hazardous substances would cause emotional distress.

27. Defendant's exposure of Plaintiffs to hazardous substances and denial of personal protective equipment and respirators to Plaintiffs have caused him to suffer emotional distress to a degree that no reasonable person should be expected to suffer.

28. As a direct and proximate result of Defendant's outrageous conduct, Plaintiffs, who worked for other employers at KIF, have suffered and are reasonably certain to suffer injury, increased risk of disease, liver, kidney, lungs, heart, sinus and skin problems, medical monitoring costs, pain and suffering, mental anguish, other personal injuries and other damages, with the exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Battery

29. Plaintiffs refer to and reallege Paragraphs 1 through 28 of this Complaint and incorporate them by this reference, as though fully set forth herein.

30. Plaintiffs hereby assert their cause of action for Battery.

31. Defendant knew that the toxic fly ash contained hazardous substances, including, but not limited to, arsenic before and during remediation activities.

32. Defendant nevertheless intentionally knowingly, wantonly, and willfully caused such hazardous substances to come into physical contact with Plaintiffs who worked for other employers on site.

33. Such physical contact with hazardous substances in such manner was harmful and unwanted.

34. Plaintiffs did not consent to such physical contact with any hazardous substances.

35. Plaintiffs consented only to physical contact with materials described as non-hazardous substances, and that Defendant intentionally misrepresented "you could drink fly ash daily and suffer no adverse health effects."

36. As a direct and proximate result of Defendant's causing Plaintiffs to suffer harmful physical contact with hazardous substances contained in fly ash, Plaintiffs have suffered injury or is reasonably certain to suffer increased risk of disease and illness, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

Negligence

37. Plaintiffs refer to and reallege Paragraphs 1 through 36 of this Complaint and incorporates them by this reference, as though fully set forth herein.

38. Plaintiffs hereby assert their cause of action for negligence.

39. Defendant knew that the fly ash contained arsenic and other previously referenced hazardous substances, before and during remediation activities.

40. Defendant had an obligation to the United States Environmental Protection Agency ("EPA") to ensure that hazardous substances at the Site are handled and disposed of properly.

41. The EPA's CERCLA remediation order is intended to protect a class of persons that includes Plaintiffs.

42. Defendant Jacobs Engineering Group, Inc. had a specific duty pursuant to its obligations to TVA and others to properly sample and dispose of any hazardous substances in a safe and proper manner, implement an adequate safety plan, and properly ensure appropriate safety training for all those working and performing activities on Site at KIF.

43. Jacobs Engineering Group, Inc. had a duty that was intended to protect a class of persons that includes Plaintiffs even though they worked for other employers on site.

44. The Defendant further owed Plaintiffs a duty not to expose them to the hazardous substances in an unsafe manner.

45. Defendant's knowing, wanton, and willful failure to properly handle the hazardous substances contained in fly ash and to provide personal protection equipment, in light of their knowledge of the presence of such substances on Site, constituted a breach of that duty to all who were present on site and the citizens of Roane County.

46. Defendant's breach of duty caused Plaintiffs to be continually exposed to toxic fly ash constituents.

47. As a direct and proximate result of Defendant's negligence, Plaintiffs have suffered injury or is reasonably certain to suffer increased risk of disease, fear of disease,

medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF

Negligence *Per Se*

48. Plaintiffs refer to and reallege Paragraphs 1 through 47 of this Complaint and incorporate them by this reference, as though fully set forth herein.

49. Plaintiffs hereby assert their cause of action for Negligence *per se.*

50. United States Occupational Safety and Health Administration ("OSHA") regulations establish the standard of care for protecting workers who handle hazardous materials. In accordance with 29 C.F.R. 1900 *et seq.* and more particular, 29 C.F.R. Part 1910.1018, 29 C.F.R. § 1910.1001, 29 C.F.R. § 1910.134, 29 C.F.R. § 1926.103, and other pertinent regulations and statutes.

51. Further, the Plaintiffs were engaged in an Ultrahazardous activity further imposing strict liability.

52. Defendant's failure to ensure compliance with OSHA's worker protection regulations constitute a *per se* breach of their duty of care toward Plaintiffs.

53. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs have suffered or is reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF

Intentional and/or Reckless Failure to Warn

54. Plaintiffs refer to and reallege Paragraphs 1 through 53 of this Complaint and incorporate them by this reference, as though fully set forth herein.

55. Plaintiffs hereby assert their cause of action for Intentional and/or Reckless Failure to Warn.

56. Defendant knew that the fly ash was contaminated with toxic constituents.

57. Defendant therefore had a duty to warn Plaintiffs of the presence of the toxic constituents.

58. Defendant breached its duty by not only failing to warn Plaintiffs, but actually fraudulently concealing that fact.

59. Defendant's breach of the duty to warn caused Plaintiffs to work inside the dangerous environment without any respirators, masks or personal protective equipment, and to be exposed to high concentrations of toxins during that period of his continuous exposure.

60. As a direct and proximate result of Defendant's negligent failure to warn, Plaintiffs have suffered personal injury or is reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

<u>SIXTH CLAIM FOR RELIEF</u>

Reckless Infliction of Emotional Distress

61. Plaintiffs refer to and reallege Paragraphs 1 through 60 of this Complaint and incorporate them by this reference, as though fully set forth herein.

62. Plaintiffs hereby assert their cause of action for Reckless Infliction of Emotional Distress.

63. Defendant had a duty of care toward Plaintiffs not to cause them undue emotional distress.

64. Defendant's knowing, wanton, and willful exposure of Plaintiffs to toxins and other hazardous substances breached their duty of care toward Plaintiffs.

11

65. Defendant's exposure of Plaintiffs to toxins and other hazardous substances has caused them to suffer emotional distress to a degree that no reasonable person should be expected to suffer.

66. As a direct and proximate result of Defendant's negligent infliction of emotional distress upon Plaintiffs, Plaintiffs have suffered damages, the exact amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Fraud

67. Plaintiffs refer to and allege Paragraphs 1 through 66 of this Complaint and incorporate them by this reference, as though fully set forth herein.

68. Plaintiffs hereby assert their cause of action for Fraud.

69. Defendant represented to Plaintiffs that the fly ash did not contain dangerous toxins or other hazardous substances.

70. Defendant knew that their representation was false.

71. Defendant outrageously intended to cause Plaintiffs to continue to work on the Site without respirators or personal protective equipment for their astronomical contractual benefit.

72. Plaintiffs, in justifiable reliance on Defendant's representation that the Site was safe, did work without respirators, masks or personal protective equipment and continued to do so for many hours per day.

73. Plaintiffs would not have worked in this environment without respirators or personal protective equipment had they had full knowledge that they did contact toxic constituents and other hazardous substances.

12

74. As a direct and proximate result of Defendant's fraud upon Plaintiffs, Plaintiffs have suffered personal injuries and is reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF

Misrepresentation/Fraudulent Concealment

75. Plaintiffs refer to and reallege Paragraphs 1 through 74 of this Complaint and incorporates them by this reference, as though fully set forth herein.

76. Plaintiffs hereby assert their cause of action for Negligent Misrepresentation.

77. Defendant represented to Plaintiffs that the Site did not contain toxic constituents or other hazardous substances.

78. Based upon Paragraph 7 and other information known by the Defendant, Defendant knew that their representation was false, or acted with reckless regard as to whether or not its representation was false.

79. Defendant failed to use due care and honesty regarding the accuracy of their representations.

80. Defendant intended to cause Plaintiffs to continue to work on the Site without respirators or personal protective equipment.

81. Plaintiffs, in justifiable reliance on Defendants' representation that the toxic fly ash was safe, did work on the Site without respirators, masks or personal protective equipment.

82. Plaintiffs would not have worked on Site without respirators or personal protective equipment had they known of the dangers of prolonged exposure.

As a direct and proximate result of Defendant's fraud upon Plaintiffs, Plaintiffs have suffered or is reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

Strict Liability for Ultrahazardous or Abnormally Dangerous Activity

83.  Plaintiffs refer to and reallege Paragraphs 1 through 82 of this Complaint and incorporate them by this reference, as though fully set forth herein.

84.  Plaintiffs hereby assert his cause of action for Strict Liability for Ultrahazardous or Abnormally Dangerous Activity.

85.  Remediation of a Superfund Cleanup Site without compliance with OSHA regulations poses an excessively high degree of risk of harm.

86.  The remediation of a Superfund Site without compliance with OSHA regulations is not a common activity.

87.  The remediation of a Superfund Site without compliance with OSHA regulations was entirely inappropriate to the location at which it was carried out.

88.  There is little if any value to the community in the remediation without compliance with OSHA regulations.

89.  The remediation of a toxic Superfund Site without noncompliance with OSHA regulations therefore constitutes an ultrahazardous or abnormally dangerous activity.

90.  As a direct and proximate result of the environmental remediation without compliance with OSHA regulations and other safety standards, Plaintiffs have suffered injuries or are reasonably certain to suffer increased risk of disease, fear of disease, medical

monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## JURY DEMAND

91. Plaintiffs hereby demand a trial by jury on all issues raised herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against Defendant as follows:

92. For fair compensatory damages for physical injury, pain and suffering, mental anguish, increased risk of disease, fear of disease, medical expenses, medical monitoring, and compensatory damages in any amount or amounts fair to be determined by a jury at trial;

93. Further, the spousal Plaintiff listed in this paragraph, Joy Thompson, hereby seeks judgment for damages to which she may be fairly entitled for loss of consortium.

94. For punitive damages <u>in any amount fair not to exceed twenty percent (20%)</u> of the amount of all Jacobs Engineering Group, Inc. collective contracts that were created to protect the funding taxpayers of the United States of America for the economic benefit of the TVA and the citizens of Roane County Tennessee, the Plaintiffs to this action; and

95. On all Claims for Relief, such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted this 6th of November, 2013.

HODGES, DOUGHTY & CARSON, PLLLC

/s/Joshua J. Bond
Joshua J. Bond, BPR No. 020636
617 Main Street
P.O. Box 869
Knoxville, Tennessee 37901-0869
(865) 292-2307
Attorney for Plaintiffs

15
Case 3:13-cv-00666-TAV-HBG   Document 1   Filed 11/06/13   Page 15 of 15   PageID #: 15